**SIGNED THIS: February 21, 2018**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No. 17-71908 |
| JENNIFER R. HOUSLEY, ) | |
| ) | Chapter 13 |
| Debtor. ) | |

# O P I N I O N

Before the Court is a Motion by Ideal Auto Sales for Immediate Pre Confirmation Adequate Protection Payments. Ideal Auto Sales ("Ideal") asserts that the Chapter 13 Trustee ("Trustee") is obligated to make adequate protection payments to it immediately and that the Trustee can neither require nor even request that a motion be filed or a hearing held before the payments must be made. Ideal also alleges that, because the Chapter 13 plan filed in the case does not specifically provide for pre-confirmation adequate protection payments to it, the plan violates §1326 of the Code. Because both the Debtor and the Trustee

agree, after having had an opportunity to be heard, that adequate protection payments should be made to Ideal, an order will be entered providing for such payments to be made. Ideal and its attorney, Jeffry Justice, are admonished, however, that many of the allegations in their motion are not supported by the facts or controlling law.

## I. Factual and Procedural Background

Jennifer R. Housley ("Debtor") filed her voluntary petition under Chapter 13 on December 8, 2017. On her Schedule A/B: Property, the Debtor listed ownership of a 2008 Chevrolet Equinox valued at $3625. On her Schedule D: Creditors Who Hold Claims Secured by Property, she disclosed that Ideal has a lien on the vehicle created through a purchase-money transaction in November 2016. According to the Debtor, Ideal is owed $12,400. The Debtor also filed a Chapter 13 plan ("Plan") in which she proposes to pay Ideal $12,400 with interest at 6.25% per annum, in estimated monthly installments of $242 to be distributed by the Trustee.

Ideal promptly filed its claim asserting that, as of the petition date, it was owed $12,341.84 by the Debtor. On its claim form, Ideal did not fill in the requested information about the value of its collateral. Instead, it simply stated that the vehicle securing the indebtedness was acquired by the Debtor through a purchase-money transaction with Ideal within 910 days of the case filing.

On January 9, 2018, Ideal filed its motion requesting pre-confirmation adequate protection payments. In making its request, Ideal says that the failure of the Plan to specifically include such pre-confirmation payments violates §1326

of the Code. 11 U.S.C. §1326. Additionally, Ideal asserts that an Amended Order entered August 2, 2006, by the bankruptcy judges of the Central District of Illinois, regarding Chapter 13 pre-confirmation adequate protection payments ("Standing Order") compels the Trustee to make the payments demanded by Ideal immediately and without hearing or court order. Ideal's attorney says, in a letter addressed to the Trustee and attached as an exhibit to the motion, that he heard a judge in a different division of the Central District in several unidentified cases tell an attorney for a different trustee that trustees must make adequate protection payments "automatically and immediately" and that, accordingly, the Trustee here has no option other than to comply with Ideal's demands. Ideal's attorney claims that this Court "has signed off on this approach" by virtue of the Standing Order. The pending motion was filed because, notwithstanding Ideal's demand on the Trustee, the Trustee declined to disburse adequate protection payments without court order.

A hearing was held on Ideal's motion on January 23, 2018. Jeffry Justice, Ideal's attorney, did not appear personally. Instead, local counsel appeared and declined the Court's invitation to elaborate on or explain Ideal's position. The Debtor's attorney and the Trustee both appeared and stated that they did not object to the payment of pre-confirmation adequate protection to Ideal. Rather, the Trustee said that he wanted a court order authorizing specific payments to be made so that questions could not be raised later by the Debtor, Ideal, or another creditor about the propriety of the payments.

At the conclusion of the brief hearing, the Court acknowledged that entry of an agreed order providing for pre-confirmation adequate protection payments

to Ideal was appropriate. The basis for such order, however, would be the agreement of the parties; Ideal's argument that such payments are mandated to be made without motion, hearing, or court order is incorrect. The Court stated that this Opinion would be forthcoming to explain the serious defects in Ideal's position.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Matters involving the administration of the estate, the allowance of claims against the estate, plan confirmation, and the adjustment of the debtor-creditor relationship are core proceedings. 28 U.S.C. §157(b)(2)(A), (B), (L), (O). This matter arises from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III. Legal Analysis

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") made significant changes to §1326 of the Code. 11 U.S.C. §1326. The BAPCPA amendments changed the requirement that a debtor begin making plan payments within 30 days of the filing of a plan to a requirement that such payments begin within 30 days of the order for relief or the filing of a plan, which ever is earlier. 11 U.S.C. §1326(a)(1). The BAPCPA amendments also clarified that

the payments required to be made by a debtor included not only the plan payments proposed to be made to a trustee but also ongoing payments for the lease of personal property and payments to provide pre-confirmation adequate protection to holders of certain types of claims secured by personal property. 11 U.S.C. §1326(a)(1)(A)–(C).

The pre-confirmation adequate protection payments provided for in §1326(a)(1)(C) are limited to payments to holders of purchase-money secured claims and relate only to the portion of the indebtedness that becomes due after the case filing. 11 U.S.C. §1326(a)(1)(C). Debtors are to make the payments directly, and, to the extent that a debtor's proposed plan designates the trustee as the disbursing agent for plan payments to the creditor, the debtor may deduct any such payments from the amounts otherwise due to the trustee. *Id.* The debtor must then also provide the trustee with proof of all pre-confirmation payments actually made. *Id.* To the extent that a party in interest questions the debtor's compliance with the requirement to make adequate protection payments, after notice and hearing, a court may modify, increase, or decrease such payments. 11 U.S.C. §1326(a)(3).[1]

The BAPCPA amendments to §1326 were met with some criticism, particularly for the provision directing debtors to make pre-confirmation payments

---

[1] Ideal contends that the Plan violates §1326 because it does not provide for payment of pre-confirmation adequate protection to Ideal. But this argument was not developed in the motion or by local counsel at the hearing on the motion, and it can be summarily dismissed. Section 1326 sets forth the obligation of a debtor to make certain payments within 30 days of the filing of a plan or petition. While proposed plan payments under §1326(a)(1)(A) will necessarily be provided for in a corresponding proposed plan, §1326 does not specify that any of the payments listed therein must be set forth in a proposed plan. Nothing in §1326—or any other Code section—requires that pre-confirmation adequate protection payments be set forth in a proposed plan.

directly to creditors who would be paid by the trustee post-confirmation. *See In re Brown*, 348 B.R. 583, 591–92 (Bankr. N.D. Ga. 2006) (collecting commentary). An obvious concern was the accounting issues that would arise from debtors making payments directly on claims that were ultimately to be paid by the trustee. *Id*. Because the provisions of §1326, as amended by BAPCPA, were qualified by the statement "[u]nless the court orders otherwise," many bankruptcy courts—including the Central District of Illinois—chose to enter standing orders modifying the procedures set forth in §1326. 11 U.S.C. §1326(a)(1).

The Standing Order entered August 2, 2006, provides that debtors are to make pre-confirmation adequate protection payments directly to the types of creditors described in §1326(a)(1)(C) only if such creditors are to be paid directly post-confirmation. If a debtor's proposed plan provides for such creditors to be paid through plan payments to the trustee post-confirmation, however, the debtor is required to make full payments to the trustee, and the trustee is directed to pay the pre-confirmation adequate protection payments to the creditors in the amount that they would receive if the debtor's pending plan were confirmed as filed. The Standing Order also clarifies that pre-confirmation adequate protection payments are subject to the trustee's percentage fee.

In making its demand in this case, Ideal points to the specific language of the Standing Order that says that a debtor "shall" pay the trustee, and the trustee "shall" make the adequate protection payments when a plan provides for the trustee to be the disbursing agent to a particular creditor. Ideal argues that the use of the word "shall" makes the payments mandatory, automatic, and immediate and that a trustee has no recourse other than to pay what is

demanded. This Court disagrees and has consistently interpreted the "shall" language of the Standing Order to absolutely control the disbursing agent for the adequate protection payments but not to modify the provisions of the Code and Rules that support the filing and noticing of a motion to obtain adequate protection payments. 11 U.S.C. §§362(d)(1), 1326(a)(3); Fed. R. Bankr. P. 4001(d).

At the time of the BAPCPA amendments and the entry of the Standing Order, Chapter 13 plans filed in the Springfield Division were short and simple; no model form had been adopted. The plans did not generally suggest or even estimate a specific monthly payment for secured creditors, and most plans did not identify whether a claim was for a purchase-money transaction. And when a creditor's collateral was personal property rather than real estate, most plans did not classify amounts past due separately from amounts coming due after filing. Thus, determining whether a particular creditor was entitled to adequate protection payments and, if so, what amount the creditor would receive if a pending plan were confirmed as filed was not an easy or obvious calculation.

In 2013, a model plan was adopted for use in the Springfield Division, and, in December 2017, a model plan was adopted for mandatory use throughout the Central District. The current model plan—used in this case—does require an estimate of the monthly payment amount for each secured creditor. But it does not require that purchase-money transactions be specifically identified. Nor does it require that claims secured by personal property be bifurcated into arrearage and postpetition amounts. Thus, whether a particular creditor is entitled to adequate protection payments continues to not necessarily be obvious.

Determining what a creditor would be paid if a pending plan were confirmed

as filed also remains a sometimes difficult task. Initial plans frequently do not cash flow; a trustee may be directed to pay out more than what a debtor is proposing to pay in. Plans may have internal inconsistencies, such as proposing to both pay a secured claim and surrender the collateral supporting the claim. It is also not unusual, unfortunately, to find that initial plans conflict with a debtor's schedules in that priority or secured creditors listed on the schedules are not provided for in the plan. Alternatively, some plans include provisions for the payment of unscheduled priority or secured creditors. The existence of any of these issues would make a plan unconfirmable, and directing a trustee to make payments as though such plan were confirmed as filed would require the trustee to guess at how the problem issues might be resolved.

Even after a plan has been confirmed, all claims have been filed, and all claim objections have been resolved, a trustee has a difficult job in making sure that creditors are paid as the plan requires and in accordance with all local standing orders and the requirements of the Code and Rules. *In re Niederhauser*, 2008 WL 958193, at *2 (Bankr. C.D. Ill. Apr. 8, 2008); *see also In re Erwin*, 376 B.R. 897, 902 (Bankr. C.D. Ill. 2007) (Perkins, J.) (Chapter 13 trustees must have some discretion to administer plans and to determine the exact amount and timing of creditor payments, subject to orders of the court). At the 30-day mark in a case, when adequate protection payments are to commence, the job may be more than difficult. The trustee may not have yet had an opportunity to meet with the debtor and conduct a creditors meeting. Discrepancies between the schedules and the pending plan will not yet have been resolved. Few, if any, claims may have been filed. Asking a trustee, at that point in a case, to pay out what a creditor

would receive if a pending, but perhaps unconfirmable, plan were confirmed, is certainly asking the trustee to guess. It was never this Court's intention to put the Trustee in the position of guessing about his obligations.

Trustees in the Central District are not prohibited from disbursing pre-confirmation adequate protection payments without court order; the Standing Order authorizes them to make such payments. But given the complications of determining and calculating pre-confirmation adequate protection payments early on in a case, it is not surprising—in fact, it is quite prudent—that the Trustee would want a court order specifically authorizing the payments to be made in each case. In the Springfield Division, at the urging of the Trustee, the practice since the entry of the Standing Order has been for the debtor or a creditor to file a motion asking for specific pre-confirmation adequate protection payments to commence. Frequently, the motions are resolved by agreed order without the necessity of a hearing. Occasionally, a brief hearing has been required to sort out discrepancies and determine the exact amount of the payment that should be made. To the best of this Court's recollection, the only creditor who has ever objected to having to participate in the process is Ideal.[2]

The provisions of the Code and Rules relating to adequate protection payments support the local practice. A creditor may be entitled to relief from the

---

[2] This is true despite Ideal's success in obtaining adequate protection payments through the process and despite the courtesies which have been extended to Ideal and its attorney. For example, in *In re Holt* (13-72211), Ideal filed a motion for adequate protection payments to which the Trustee filed a limited objection identifying discrepancies between the plan, the schedules, and Ideal's claim. After a brief hearing at which Attorney Justice was allowed to participate telephonically, the parties agreed on the appropriate amount for the adequate protection payments, and an agreed order was entered. In *In re Schafer* (16-71683), Ideal filed a motion for adequate protection payments, and an agreed order was entered before the scheduled hearing, resulting in cancellation of the hearing.

automatic stay if its interests in property are not adequately protected. 11 U.S.C. §362(d)(1). The debtor bears the burden of offering adequate protection payments and proving that a creditor's interest is adequately protected if stay relief is sought. 11 U.S.C. §362(g)(2); *In re Sauk Steel Co.*, 133 B.R. 431, 436 (Bankr. N.D. Ill. 1991). Nothing in §1326 or the Standing Order changes the controlling law that debtors bear both the ultimate responsibility for making sure that creditors are adequately protected and the consequences if adequate protection payments are not made. And nothing in the Standing Order changed the rights of creditors who do not receive the adequate protection payments they believe they are entitled to receive from seeking relief by filing a motion to compel or modify such payments. 11 U.S.C. §1326(a)(3). Ideal's remedy for the Debtor not taking the appropriate action to make sure adequate protection payments were being made under §1326 and the Standing Order was to file its own motion—just as the Trustee requested.

Importantly, the Rules appear to require at least minimal notice and opportunity to be heard regarding the allowance of adequate protection payments, even when all parties are in agreement. Fed. R. Bankr. P. 4001(d). Simplified procedures—such as this Court follows—whereby agreed orders may be entered without the necessity of a hearing, are appropriate when sufficient notice and an opportunity for a hearing have been given. Fed. R. Bankr. P. 4001(d)(4). Notwithstanding Ideal's position, these procedures are also appropriate when addressing pre-confirmation adequate protection issues. Further, it is questionable whether Ideal and its attorney have really thought through the issues associated with receiving adequate protection payments without the entry

of an order clarifying how such payments are to be applied.

Adequate protection payments to a secured creditor are made to compensate for the decrease in value of the creditors' collateral caused by the use of the collateral by a debtor or trustee. 11 U.S.C. §361(1); *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 370–71 (1988). When a creditor is undersecured, payments may be required to protect the creditor's interest in its collateral, but such payments are not required to include interest. *Timbers*, 484 U.S. at 382. Thus, adequate protection payments made to undersecured creditors, including Chapter 13 pre-confirmation payments made pursuant to §1326, are generally applied to principal only. *Brown*, 348 B.R. at 594.

In its motion filed here, Ideal asks for $242 per month to be paid to it in adequate protection payments but makes no mention of applying any portion of the payments to interest. Although this Court makes no specific finding on the issue, Ideal is most likely substantially undersecured here; the Debtor says that her vehicle is worth only $3625, and Ideal's secured claim is over $12,000.[3] Nevertheless, in many similar Chapter 13 cases before this Court, Ideal has been able to negotiate agreed adequate protection orders that provide for the application of payments to both interest and principal. In the absence of such orders, *Timbers* would generally have controlled and required that all payments be applied to

---

[3] Ideal did not value its collateral in its claim but stated that the vehicle was purchased within 910 days of the case filing. By doing that, Ideal is apparently asserting that its claim cannot be bifurcated into secured and unsecured components. 11 U.S.C. §1325(a). The Debtor appears to agree and proposes to pay Ideal's entire claim through her Plan. But the issue of whether a claim is undersecured is different from the issue of whether a claim can be bifurcated for plan payment purposes. The fact that Ideal's claim is a so-called 910 claim would not prevent *Timbers* from controlling the adequate protection issues presented.

principal only. Because the Standing Order makes no mention of the application of payments to interest, it cannot be construed as intending to change the application otherwise compelled by *Timbers*. Because Ideal actually benefits from the process that promotes the entry of agreed orders that allow for interest payments, its resistance to the process seems counterintuitive.

Ideal's motion should be granted but only because the Trustee and Debtor's attorney have indicated a willingness to reach agreement on an order. Ideal's position that the Trustee is obligated to respond to its demands without question is rejected.

### IV. Conclusion

Many complicated issues are involved in determining whether creditors are entitled to adequate protection payments and, if so, what amount is appropriate. With respect to Chapter 13 pre-confirmation adequate protection payments, the issues are somewhat narrowed by the provisions of §1326 and the Standing Order but still may involve contested issues of fact or law. Thus, the local practice, developed at the urging of the Trustee, which requires a motion to be filed and an order to be entered before the Trustee commences making such payments, is appropriate and serves to protect the interests of all parties. Ideal's criticism of the practice is misguided.

This Court recognizes that it may be confusing, perhaps even frustrating, for local attorneys to see different practices followed in different divisions of the Central District. And this may be particularly true when the different practices arise pursuant to a common Standing Order. But this is not the only area where

practices differ from judge to judge or division to division. Learning about, accepting, and following such different practices is part of practicing law. Nothing in this Opinion is meant to suggest that the practices followed by other judges or trustees are problematic. Rather, Ideal and Mr. Justice are admonished that the practices of this Court should be respected and followed in all cases pending before it.

An order will be entered giving the parties time to file an agreed order providing for pre-confirmation adequate protection payments to Ideal.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###